United States District Court
Eastern District of New York                    1:18-cv-04617

Russell Ransom individually and on behalf
of all others similarly situated

                        Plaintiff

        - against -                              Complaint

Premier Nutrition Corporation

                        Defendant

Plaintiff by attorneys allege upon information and belief, except for allegations pertaining

to plaintiff, which are based on personal knowledge:

1.      Premier Nutrition Corporation ("defendant") manufactures, distributes, markets,

labels and sells the "Clean Whey Protein Bar" products (the "Products") in various flavor

combinations (front label below) under the "PowerBar" brand.



2.      The front label of the Products contains the following statements:

        •   Clean Whey Protein Bar

        •   No Artificial Colors, Flavors, or Sweeteners

        •   20g Protein

        •   4g Net Carbs

1

- 2g Sugar

3.     Protein sources from whey and milk are valued for ability increase in muscle protein breakdown as a result of the intense exercise to optimize cellular and tissue repair and to build lean body mass.

4.     Various gradations of whey and milk proteins exist, and are differentiated based on their protein concentration:

| Milk Protein Concentrate (MPC) | concentrated milk protein product that contains both casein and whey protein with its protein concentration designated by a number following MPC, i.e., MPC80 has a protein concentration of 80 percent |
|---|---|
| Milk protein isolate (MPI) | MPC with a protein concentration of 90 percent or more from other forms of MPC |
| Whey Protein Concentrate (WPC) | Any whey protein with a protein concentration of 25 percent or more, designated as WPC with the protein concentration expressed by a number |
| Whey Protein Isolate (WPI) | WPC with a protein concentration of 90 percent or more (WPI90 or WPC90). |

5.     Milk protein concentrate contains both casein and whey protein

6.     Whey is produced as a by-product of cheese or casein manufacturing.

7.     WPC is produced by applying the ultrafiltration process to whey.

8.     The production of WPI requires processing beyond the ultrafiltration and diafiltration processes.

9.     Whey protein isolate is the most concentrated form of whey protein and has a higher protein content and is lower in carbohydrates, lactose and fat than whey protein concentrate.

10.    Whey protein isolate has a greater ability to preserve glutamine residues than whey protein concentrate.

11.     Whey protein isolate has been shown to augment protein synthesis following exertion and has a superior beneficial effect on an individual's recovery from exertion, regardless of whether or not they regularly engage in physical activity.

12.     Whey protein isolate is typically more expensive due to the additional manufacturing process it undergoes.

13.     Reasonable consumers who purchase one of the Products will expect it to contain only the purest, most concentrated form of protein, because it has lower fat and lactose (carbohydrate) levels than whey protein concentrate.

14.     In the context of whey protein, reasonable consumers and plaintiff who purchase(d) the Products will expect a self-identified "clean whey protein bar" to describe a food that exclusively contains the purest, most concentrated form of whey protein – whey protein isolate that has lower fat content and lactose (carbohydrate) levels than whey protein concentrate.

15.     This is consistent with a standard dictionary definition, which states the "meaning of clean usually refers to removing something unwanted: you clean your hands by washing them, then you can clean some grapes," and define "clean" as unadulterated or pure. [1]

16.     In other words, "clean whey protein bar" gives the impression the protein source is only the most concentrated form of whey – whey protein isolate – and free from fat and lactose.

17.     This Products' representation is thus deceptive and misleading because:

    i.      the presence of the most concentrated whey protein has a material bearing on price and consumer acceptance of the Product and

    ii.     the name gives the impression that the most concentrated form of whey protein is present in an amount greater than is actually the case.

18.     The ingredient list and nutrition facts for the Vanilla Coconut Crunch is below

**INGREDIENTS:** POWERBAR PROTEIN BLEND (WHEY PROTEIN ISOLATE, MILK PROTEIN ISOLATE), INULIN, SOLUBLE CORN FIBER, GLYCERIN, ALMONDS, COCONUT OIL, ERYTHRITOL, COCONUT, WHEY PROTEIN CONCENTRATE, WATER, LESS THAN 2% OF: RICE STARCH, PALM KERNEL OIL, SUNFLOWER LECITHIN, TAPIOCA STARCH, PALM OIL, NATURAL FLAVORS, SALT, NONFAT DRY MILK, WHOLE MILK POWDER, CALCIUM CARBONATE, STEVIOL GLYCOSIDES (STEVIA LEAF EXTRACT).
**CONTAINS:** ALMONDS, COCONUT, MILK.

Ingredients: Powerbar Protein Blend (Whey Protein Isolate, Milk Protein Isolate), Inulin, Soluble Corn Fiber, Glycerin, Almonds, Coconut Oil, Erythritol, Coconut, Whey Protein Concentrate, Water, Less than 2% of: Rice Starch, Palm Kernel Oil, Sunflower Lecithin, Tapioca Starch, Palm Oil, Natural Flavors, Salt, Nonfat Dry Milk, Whole Milk Powder, Calcium Carbonate, Steviol Glycosides (Stevia Leaf Extract).

## Nutrition Facts

Serving Size 1 bar (60g)
Servings Per Container 16

**Amount Per Serving**

**Calories** 200      Calories from Fat 60

| | % Daily Value* |
|---|---|
| **Total Fat** 7g | 11% |
| Saturated Fat 3g | 15% |
| Trans Fat 0g | |
| **Cholesterol** 10mg | 3% |
| **Sodium** 115mg | 5% |
| **Potassium** 115mg | 3% |
| **Total Carbohydrate** 24g | 8% |
| Dietary Fiber 12g | 48% |
| Sugars 2g | |
| Sugar Alcohol 8g | |
| **Protein** 20g | 39% |

| Vitamin A 0% | • | Vitamin C 0% |
|---|---|---|
| Calcium 25% | • | Iron 2% |

*Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs:

| | Calories: | 2,000 | 2,500 |
|---|---|---|---|
| Total Fat | Less than | 65g | 80g |
| Sat Fat | Less than | 20g | 25g |
| Cholesterol | Less than | 300mg | 300mg |
| Sodium | Less than | 2,400mg | 2,400mg |
| Total Carbohydrate | | 300g | 375g |
| Dietary Fiber | | 25g | 30g |
| Protein | | 50g | 65g |

19.     The main source of saturated fats in the Products is coconut oil because (1) the coconut oil is present across the Products and not only in a variety with a coconut flavor and (2) WPI and MPI are not significant sources of saturated fat.

20.     According to the USDA Nutrition Database, 3 grams of coconut oil provides 2.5 grams of saturated fat (using 2.5 grams as the target because this is the amount present in the non-coconut varieties and accounts for the independent presence of coconut, which would contain a minor amount of coconut oil).

21.     Non-saturated fats account for the difference between total fat and saturated fats.

22.    The primary source of non-saturated fats across the Products is milk protein isolate, which has approximately twice the fat content per gram than whey protein isolate, which can have close to zero fat when the protein concentration increases above 90.

23.    Assuming a difference of 3-4 grams of non-saturated fat must be accounted for, the milk protein isolate would have to contribute

24.    Assuming a milk protein concentrate that is 90 percent protein, the fat percent would be 1.2.

25.    To reach 3 grams of non-saturated fat, the amount of milk protein at a concentration of 90%, would mean the milk protein would have to contribute 9 grams to the total protein content of 20 grams and the other 11 grams would be attributed to the whey protein isolate.

26.    The above calculations are giving the Products the benefit of every doubt and inference, understanding that certain figures could not be adequately calculated until discovery.

27.    Nevertheless, because it is plausible that the proportion of whey protein isolate to milk protein isolate is 55:45, the labeling and identification of the Products as "Clean Whey Protein Bar" is deceptive and misleading because under the most favorable inferences, the amount of whey isolate is only slightly above the milk isolate.

28.    The Products' claims of "No Artificial Colors, Flavors or Sweeteners" is false, deceptive and misleading due to the presence of the artificial and synthetic sweetener, erythritol.

29.    Erythritol is a sugar alcohol that has a sweetening effect and is present across the Products at 8 grams per serving size.

30.    Reasonable consumers, the FDA, and Congress, understand "synthetic" to be a synonym for "artificial."

5

31.     "Synthetic" is commonly defined as a substance that is formulated or manufactured through a chemical process or intervention which chemically alters a substance extracted from naturally occurring sources, such as plants, animals, or minerals, excluding substances created by naturally occurring processes.

32.     Though erythritol can be produced through the natural process of fermentation of glucose, its commercial production entails fermenting glucose derived from enzymatic hydrolysis of wheat or corn with trichosporonoides megachiliensis.

33.     After the fermentation process is complete and the broth is heated to kill the production organism, dead cells are filtered out and the erythritol is separated.

34.     The erythritol is then purified by ion exchange resin, activated charcoal, ultrafiltration and crystallization, resulting in a fine crystalline version of erythritol.

35.     As a result of the erythritol, a sweetener produced through artificial means, it is false and misleading to claim the Products do not contain artificial sweeteners.

36.     Excluding tax, the Products cost no less than $3.99, a premium price compared to other similar products.

Jurisdiction and Venue

37.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

38.     Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

39.     This Court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

40.     Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and in New York.

6

41.     A substantial part of events and omissions giving rise to the claims occurred in this District.

Class Allegations

42.     The classes consist of all consumers in the following states: _all_ , _New York_ who purchased any Products with actionable representations during the statutes of limitation.

43.     A class action is superior to other methods for fair and efficient adjudication of this controversy.

44.     The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

45.     Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

46.     Plaintiff(s) claims and the basis for relief are typical to other members because all were subjected to the same representations.

47.     Plaintiff(s) is/are an adequate representative because his/her/their interests do not conflict with other members.

48.     No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

49.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

50.     Plaintiff(s) counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

51.     Plaintiff(s) seeks class-wide injunctive relief because the practices continue.

Parties

52.    Plaintiff is a citizen of Kings County, New York.

53.    In 2017, plaintiff purchased one or more of the Products personal consumption, for no less than $3.99, excluding tax, at a store located within their respective districts.

54.    Plaintiff paid this premium because prior to purchase, plaintiff saw and relied on the misleading representations.

55.    Defendant is a Delaware corporation with a principal place of business in California.

New York General Business Law ("GBL") §§ 349 & 350

56.    Plaintiffs incorporates by references all preceding paragraphs.

57.    Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

58.    Plaintiff desired to purchase a healthy food bar which provided nutritional value derived from foods in the forms promoted by defendant and believed that he/she did so based on the representations of defendant.

59.    Defendant's representations are false, unfair, deceptive and misleading for the reasons described herein.

60.    The representations and omissions were relied on by plaintiff and class members, who paid more than they would have otherwise, causing damages.

Negligent Misrepresentation

61.    Plaintiff incorporates by references all preceding paragraphs.

62.    Defendant misrepresented the composition of the Products by using a name which only promoted the ingredient or component valued most by consumers.

63.    Defendant had a duty to disclose, in a manner prescribed by law, that its Products did not contain said ingredient in the proportion its name purported it to.

64.    At the time of the representations, defendant knew or should have known same were false or misleading.

65.    Defendant negligently misrepresented and/or negligently omitted material facts.

66.    Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

67.    Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, thereby suffering damages.

### Breach of Express Warranty and Implied Warranty of Merchantability

68.    Plaintiff incorporates by references all preceding paragraphs.

69.    Defendant manufactures and sells food bar products purporting to consist of the highest levels and grades of whey protein as denoted by its "Clean Whey Protein Bar" product line and the absence of artificial colors, flavors, or sweeteners.

70.    Defendant warranted to plaintiff and class members that the Products contained/did not contain such, when this was not truthful and was misleading due to what it omitted, etc.

71.    The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

72.    Plaintiff and class members relied on defendant's claims, paying more than they would have otherwise.

### Fraud

73.    Plaintiff incorporates by references all preceding paragraphs.

74.    Defendant's purpose was to mislead consumers who seek foods which are optimal for exercise and nutrition and not made with artificial sweeteners.

75.    Defendant's intent was to mislead consumers by not disclosing that the "clean whey

protein" was present in close to the same amount as the "clean milk protein."

76.    Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have otherwise, entitling them to damages.

Unjust Enrichment

77.    Plaintiff incorporates by references all preceding paragraphs.

78.    Defendant obtained benefits and monies because the Products were not as represented, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of such inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE,** plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant(s) to correct such practices to comply with the law;

3. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and GBL claims;

4. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

5. Such other and further relief as the Court deems just and proper.


Dated:    August 16, 2018

                                   Respectfully submitted,

                                   Sheehan & Associates, P.C.
                                   /s/Spencer Sheehan

10

11

Spencer Sheehan
891 Northern Blvd., Suite 201
Great Neck, NY 11021
Tel: (516) 303-0552
spencer@spencersheehan.com


Levin-Epstein & Associates, P.C.
/s/Joshua Levin-Epstein

Joshua Levin-Epstein
1 Penn Plaza, Suite 2527
New York, NY 10119
Tel: (212) 792-0046

1:18-cv-04617
United States District Court
Eastern District of New York

Russell Ransom individually and on behalf of all others similarly situated

Plaintiffs

- against -

Premier Nutrition Corporation

Defendant(s)

## Complaint

Sheehan & Associates, P.C.
891 Northern Blvd., #201
Great Neck, NY 11021
Tel: (516) 303-0052
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  August 16, 2018

/s/ Spencer Sheehan
Spencer Sheehan